75413. FAVORS v. ALCO MANUFACTURING COMPANY et al.
(367 SE2d 328)

McMURRAY, Presiding Judge.

Plaintiff Favors brought suit against Alco Manufacturing Company ("Alco"), J. T. Crider and Sanders Lindley in the Superior Court of Fulton County. Plaintiff had been employed by Alco at its Douglasville, Georgia facility. Her employment was terminated by Crider, Alco's plant manager, on July 11, 1985. Lindley, a shop foreman, was plaintiff's boss during the period of her Alco employment.

Plaintiff's complaint was cast in five counts. Counts 1, 2 and 3 sought damages against Lindley for sexual harassment, battery and invasion of privacy. In this regard, it was alleged that on numerous occasions Lindley made demands upon plaintiff for sexual favors and he touched, grabbed and squeezed her private areas in a lewd manner.

In Count 4 of the complaint, plaintiff alleged that Alco was liable vicariously for Lindley's conduct. It was also asserted that Alco negligently failed to provide a work place which was free from sexual harassment.

Count 5 was levelled against Lindley and Crider. It was alleged therein that these defendants tortiously interfered with plaintiff's contract of employment.

Defendants answered the complaint. They denied the material allegations of each count.

The parties commenced discovery and plaintiff gave a deposition in which she deposed that Lindley sexually harassed her two or three times a week between December 1984 and May or June 1985; that Lindley also sexually harassed other female employees at Alco; that the sexual harassment by Lindley often occurred in the presence of other employees; and that, therefore, other employees (including plaintiff's immediate supervisor) were aware of Lindley's conduct. Plaintiff also deposed that she always reacted negatively to Lindley's advances; that after the last incident of sexual harassment she brought the matter to the attention of Crider; that Crider confronted Lindley with plaintiff's allegations and told him, in plaintiff's presence, that such incidents were not to happen again; that immediately after that meeting, Lindley called plaintiff a "bitch" and a "whore"; and that no further acts of harassment took place.

Finally, plaintiff deposed that her employment was terminated approximately four to six weeks after she complained to Crider about Lindley's conduct. In this regard, plaintiff averred that Lindley wanted plaintiff fired to retaliate for her negative reaction to his advances; that in order to stir up trouble for plaintiff, Lindley told Crider that plaintiff was wearing a halter top which the safety committee asked her not to wear; that Lindley's statement to Crider was a lie because the safety committee did not object to the halter top; and that, following a dispute with Crider about the halter top, she was fired when she tried to use the telephone to call her lawyer.

Thereafter, defendants Crider and Lindley moved for partial summary judgment upon Count 5 of the complaint. In an accompanying affidavit, Crider deposed that plaintiff was not employed by Alco for a definite time period; that he had absolute authority to discharge plaintiff from Alco's employment; and that he was "solely responsible for the decision to discharge her." A memorandum was attached to Crider's affidavit. Crider deposed that he prepared the memorandum on or about the date of plaintiff's discharge in the regular course of his duties and that the preparation of such memoranda was one of his regular duties as plant manager. According to Crider, the memorandum set forth "a complete and accurate account of the circumstances surrounding [plaintiff's] discharge."

The memorandum shows the following: Plaintiff was discharged by Crider when she opted to use the telephone to call her lawyer after being told not to do so on company time. The telephone dispute came on the heels of an argument about a halter top which plaintiff was wearing. Crider was informed about the halter top by Lindley who told him that safety committee members asked plaintiff to change the top because it violated safety committee rules and that plaintiff refused. When plaintiff was called into Crider's office, the halter top argument ensued. It was at that point that plaintiff went to the tele-

phone to call her lawyer and she was fired.

Lindley also submitted an affidavit in support of the Count 5 summary judgment motion. He deposed that he received information from a member of Alco's safety committee that plaintiff was wearing a blouse which violated safety rules and that he passed this information on to Crider. He also deposed that he never behaved inappropriately toward plaintiff or other female employees under his supervision.

Following a hearing, the trial court granted partial summary judgment to Crider and Lindley with respect to Count 5. Alco then sought summary judgment upon Count 4 of the complaint.

In support of its partial summary judgment motion, Alco submitted the affidavits of Crider and Martin L. Reid, Alco's general manager. In their affidavits, Crider and Reid deposed that plaintiff complained about Lindley's conduct on only one occasion; that Crider immediately told Lindley "if anything was going on . . . it was not to happen anymore"; and that no other employee was ever heard to complain about sexual harassment at Alco.

In opposition to Alco's partial summary judgment motion, plaintiff submitted the affidavit of another Alco employee, Ms. Henderson. Her affidavit shows that she witnessed acts of sexual harassment by Lindley; that a night supervisor was aware of Lindley's conduct; that she talked with a leadman about Lindley's conduct in July 1983; and that she told Crider that Lindley was constantly "bothering" her.

Alco's motion for partial summary judgment was granted by the trial court and plaintiff appeals. She enumerates error upon the grant of summary judgment to defendants with respect to Counts 4 and 5 of the complaint. *Held*:

1. At the outset, we observe that Count 4 of the complaint sets forth a common law tort claim against Alco. *Cox v. Brazo*, 165 Ga. App. 888, 889 (303 SE2d 71), aff'd 251 Ga. 491 (307 SE2d 474). Violations of Title VII of the Civil Rights Act of 1964 (42 USCA § 2000 (e)) are not alleged. (Indeed, our state courts are without jurisdiction to entertain such an action. *Retired Public Employees' Assn. v. Bd. of Administration of Public Employees' Retirement Systems*, 229 Cal. Rptr. 69 (Cal. App. 3 Dist. 1986); *Fox v. Eaton Corp.*, 358 NE2d 536 (48 Ohio St.2d 236) (1976).) Accordingly, our analysis will proceed along traditional, common law lines and we will not entertain arguments based upon Title VII cases and rationales.

2. Plaintiff argues that Alco is liable for the alleged sexual harassment of plaintiff under the doctrine of respondeat superior. This argument cannot be sustained. The alleged sexual harassment was not committed in the furtherance of Alco's business. Rather, the acts allegedly committed by Lindley were outside the scope of employment. *Cox v. Brazo*, 165 Ga. App. 888, 889, supra; *Southern Bell Tel. &c.*

*Co. v. Sharara*, 167 Ga. App. 665, 667 (2) (307 SE2d 129).

3. "A cause of action for negligence against an employer may be stated if the employer, in the exercise of reasonable care, should have known of an employee's reputation for sexual harassment and that it was foreseeable that the employee would engage in sexual harassment of a fellow employee but he was continued in his employment. *Hollrah v. Freidrich*, 634 SW2d 221 (Mo. App. 1982)." *Cox v. Brazo*, 165 Ga. App. 888 (1), 889, supra. Accord *Newsome v. Cooper-Wiss, Inc.*, 179 Ga. App. 670, 673 (3) (347 SE2d 619). Thus, in order to prevail upon its partial summary judgment motion, the burden was upon Alco to show that it neither knew, nor, in the exercise of reasonable care, should have known, of Lindley's reputation for sexual harassment. *Newsome v. Cooper-Wiss, Inc.*, 179 Ga. App. 670, 673 (3), supra. Our review of the record leads us to conclude that Alco failed to carry its burden in this regard.

"On a motion for summary judgment the evidence must be construed most strongly against the movant, and the party opposing the motion is entitled to all inferences that may fairly and reasonably be drawn in support of his case. *Buchanan v. Georgia Boy Pest Control Co.*, 161 Ga. App. 301 (287 SE2d 752) (1982)." *Vizzini v. Blonder*, 165 Ga. App. 840 (303 SE2d 38). Giving the plaintiff, the party opposing Alco's partial summary judgment motion, the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence, we find that Alco's female employees were sexually harassed by Lindley; that the sexual harassment took place at Alco frequently and openly; and that Alco's employees (including supervisors) generally were aware of it.

Alco asserts it had no reason to know of Lindley's reputation for sexual harassment because complaints were not received by its plant manager or general manager. We disagree. The issue in cases of this kind is knowledge or reason to know, not complaints. An employer may know, or in the exercise of due care have reason to know, of an employee's reputation for sexual harassment in the absence of complaints. Did Alco know of Lindley's reputation for sexual harassment? Should it have known of Lindley's reputation in the exercise of reasonable care? Genuine issues of material fact remain with regard to these questions. It follows that the trial court erred in granting Alco's partial summary judgment motion.

4. " 'The fact that employment is at will and that the employer is free from liability for discharging an employee does not carry with it immunity to a third person who, without justification, causes the discharge of the employee. Thus, the rule has been stated that where a third person induces an employer to discharge an employee, under a contract terminable at will, but under which the employment would continue indefinitely, in accordance with the desire of the employer,

except for such interference, and where the only motive actuating the third person is a desire to injure the employee . . . a cause of action arises in favor of the employee against such third person. . . .' [Cit.]" *Ott v. Gandy*, 66 Ga. App. 684, 688 (19 SE2d 180). Thus, although plaintiff's employment was terminable at will, nevertheless, she had a valuable contract right with which a third person could not tortiously interfere.

In Count 5 of the complaint, plaintiff alleged that together Crider and Lindley tortiously interfered with her employment contract. The evidence demonstrates without contradiction, however, that Crider was vested with unconditional authority to discharge plaintiff. Thus, it cannot be said that Crider tortiously interfered with plaintiff's contract of employment regardless of his motives. *Georgia Power Co. v. Busbin*, 242 Ga. 612, 613 (2) (250 SE2d 442). The trial court correctly granted summary judgment to Crider upon Count 5 of the complaint.

On the other hand, Lindley did not have the absolute right to discharge plaintiff. He was a "third person" with potential liability for the wrongful procurement of plaintiff's discharge. *Georgia Power Co. v. Busbin*, 242 Ga. 612, 613 (2) 614, supra. Did Lindley tortiously interfere with plaintiff's contract of employment?

Giving the plaintiff the benefit of all reasonable doubts, we find the following facts and inferences: Lindley wanted plaintiff discharged because she did not accede to his requests. In order to achieve that end, Lindley falsely told Crider that plaintiff was wearing a halter top contrary to a directive of the safety committee. Following a discussion with Crider about the wearing of halter tops, plaintiff attempted to use the telephone to call her attorney. Crider told plaintiff not to use the telephone on company time but she did so anyway and was fired.

In our view this evidence is sufficient to raise a question of fact as to whether Lindley interfered with plaintiff's employment contract for purely personal reasons. It can be argued that, motivated by a desire to injure plaintiff, Lindley set in motion the machinery which led to plaintiff's discharge. Accordingly, Lindley was not entitled to summary judgment upon Count 5 of the complaint. *Newsome v. Cooper-Wiss, Inc.*, 179 Ga. App. 670, 672 (2), supra.

5. The trial court erred in granting summary judgment to Alco upon Count 4 of the complaint. With regard to Count 5, the trial court erred in granting summary judgment to Lindley; it did not err in granting summary judgment to Crider.

*Judgment affirmed in part and reversed in part. Birdsong, C. J., Deen, P. J., and Carley, J., concur. Deen, P. J., also concurs specially. Sognier, J., concurs in the judgment only. Banke, P. J., Pope, Benham and Beasley, JJ., concur in part and dissent in part.*

DEEN, Presiding Judge, concurring specially.

While I concur fully with the majority opinion, the following additional relevant observations are set forth.

1. Under the present state of the law, there should be no room for doubt that Crider may not be held liable for wrongful discharge of Favors or for tortious interference with her contract of employment. It was uncontroverted that Crider had the authority to fire Favors, and under *Georgia Power v. Busbin*, 242 Ga. 612 (250 SE2d 442) (1978) and its multitudinous progeny, he could exercise that authority for whatever reason, good, bad, or otherwise. The dissenting opinion, in effect, seeks to create an exception to this rule, where sexual discrimination is alleged, but it should be emphasized that "[w]e dare not decide a question of right by a rule of courtesy, or substitute deference to sex for deference to law." *Williams v. Simmons*, 79 Ga. 649, 655 (1887). There is, as yet, no crack in Georgia's employment-at-will doctrine through which Favors' claim against Crider could slip. See Levin, "Georgia's 'Employment-at-Will' Doctrine: Time for a Change," *The Atlanta Lawyer* (Fall 1987), pp. 5-12. (This excellent article may sprout and cause to thrive an idea whose time has come.)

"In the court-house, the standard of justice for both sexes is the same. Like the sun, the law shines on all who are in the same place with equal warmth and splendor. The most charming and attractive woman in the universe, loaded down with misfortune, is not to prevail as a suitor where she is in the wrong, be her adversary whom [sic] he may." *Boland v. Klink*, 63 Ga. 448, 453 (1879). In the specific context of employment-at-will cases, women and men equally are subject to discharge for either good or bad or no reason.

2. Favors' claim against Alco for the shop foreman's sexual harassment, based on the doctrine of respondeat superior, is controlled adversely to her position by *Cox v. Brazo*, 165 Ga. App. 888 (303 SE2d 71) (1983) and *Murphy v. ARA Svcs.*, 164 Ga. App. 859 (298 SE2d 528) (1982). The shop foreman's alleged harassment while on the job is wrong and to be deplored. "Surely, the matrons of the land are not [to be] exposed to such an indignity at the pleasure of every libertine who, with no check from the law, may be rude and reckless enough to insult their virtue." *Goodrum v. State*, 60 Ga. 509, 510 (1878). However, the shop foreman's crude, rude, reckless, rough, and rapacious behavior obviously was outside the scope of his employment, and the employer may not be held vicariously liable on that basis.

BEASLEY, Judge, concurring in part and dissenting in part.

I concur in Divisions 1, 3, and that part of Division 4 reversing summary judgment for shop foreman Lindley. However, the record does not establish as a matter of law that the sexual harassment was

outside the scope of shop foreman/supervisor Lindley's employment, so as to relieve employer Alco of liability. Also, plant manager Crider was not entitled to summary judgment either, on the claim for tortious interference with the employment contract of plaintiff, an hourly laborer. In these regards, then, I respectfully dissent to Division 2 and the portions of Divisions 4 and 5 which conclude otherwise.

1. Division 2, scope of employment. Lindley's alleged act of lying about the safety committee's disapproval of a halter top was not outside the scope of his employment, as it was his duty to report employee violations to the plant manager, since he was shop foreman and the supervisor of employees such as plaintiff. It is the exercise of this duty which is the very subject of one of plaintiff's complaints.

Secondly, when Lindley made the alleged sexual remarks and allegedly touched the employee, he was doing so in the capacity of an agent of the employer who has supervisory power and control over an hourly laborer, thus using the position Alco placed him in to subject the employee to tort. This relationship of supervisor and laborer, which Lindley allegedly misused on the job, provided the opportunity and credentials and power to do and say what he allegedly did. What must be considered is the broad scope of the shop foreman's duties, the inferior position of the laborer, and the master-servant relationship between the supervising shop foreman and the employer Alco.

This is analogous to *Miller v. Honea*, 163 Ga. App. 421, 422 (294 SE2d 629) (1982), in that the record in this case does not establish as a matter of law that Lindley "had so deviated from his duties as to make his [torts] upon [Favors] a purely personal act."

2. Division 4, tortious interference (OCGA § 51-9-1). Even if it is true that plant manager Crider had unconditional authority to discharge plaintiff insofar as employer Alco was concerned, there is evidence that he exceeded the bounds imposed by law in the exercise of that authority. Crider's own account is that plaintiff was fired because she called her attorney for advice after being told not to do so on company time, when she was confronted by him with what is allegedly a false report about her attire. As related in the majority opinion, this occurred several weeks after she complained to plant manager Crider about her supervisor's sexual harassment.

The evidence outlined, and contained in the record, permits an inference that the ostensible cause of firing was pretextual and that the real reason was her more upsetting sexual complaint. Motive is not foreclosed from relevancy. See *Energy Contractors v. Ga. Metal Systems &c. Engineering*, 186 Ga. App. 475 (367 SE2d 324) (1988). If sexual discrimination was the basis, it exceeded lawful authority, for no one in this state may exercise a contractual right to fire "at will" in violation of a person's right to equal protection of the laws. Ga. Const. 1983, Art. I, Sec. I, Par. II. At the very least, since Lindley was not

fired for sexual harassment but was simply warned, Favors may not be fired for reporting it.[1] *Georgia Power Co. v. Busbin,* 242 Ga. 612, 613 (2) (250 SE2d 442) (1978), recognized an "absolute right to discharge" but this was not in the context of alleged sexual discrimination.

Neither are these the circumstances in the case cited therein, *McElroy v. Wilson,* 143 Ga. App. 893, 894 (240 SE2d 155) (1977). *McElroy,* as a matter of fact, sets out the category into which this case falls: "where, even though the contract is terminable at will, a party with no authority to discharge the employee, being activated by an unlawful scheme or purpose to injure and damage him, maliciously and unlawfully persuades the employer to breach the contract with the employee." The authority granted by Alco to its plant manager could not exceed or supersede the law or run counter to it. "The fact that an employment is at the will of the employer and employee does not make it one at the will of others, and a malicious and wrongful interference with such employment by another is actionable although the employment be at will." *Ott v. Gandy,* 66 Ga. App. 684 (1) (19 SE2d 180) (1942).

The recent case of *Shaw v. W. M. Wrigley, Jr., Co.,* 183 Ga. App. 699, 700 (1) (359 SE2d 723) (1987), illustrates that an employee may indeed attack the motive for termination under certain circumstances designated by the law. That case involved handicap discrimination. It alluded to the similarity to cases "brought under Title VII, the federal provisions prohibiting discrimination in employment on the basis of race and sex." Just because Title VII cases are brought in federal court does not mean that the prohibitions contained therein do not bind employers, or those exercising the power to discharge, with respect to at-will employment contracts.

" '[T]he relation of master and servant gives rise to certain duties imposed by law independently of the express terms of the contract, . . . an action at tort will lie . . . [if] the discharge was accompanied by wrongful acts amounting to a trespass . . .' . . . 'The duty, for a breach of which an action ex delicto lies, must be a duty imposed by law as to some relationship, general or special, as applied to that class of cases where the alleged duty arise out of a contract.' " *Keys v. Enrichment Svcs.,* 183 Ga. App. 8, 10 (357 SE2d 852) (1987).

The duty not to violate the law in discharging an at-will employee renders the grant of summary judgment to plant manager Crider, under the evidence thus far developed, error. Whether he is personally liable remains a question of fact to be determined by the

---

[1] OCGA § 45-19-29 (1) prohibits discrimination based on sex, in public employment. See *Kilmark v. Bd. of Regents,* 175 Ga. App. 857 (334 SE2d 890) (1985).

jury. *American Game &c. Music Svc. v. Knighton,* 178 Ga. App. 745, 746 (1) (344 SE2d 717) (1986).

I am authorized to state that Presiding Judge Banke, Judge Pope, and Judge Benham join in this opinion.

DECIDED MARCH 18, 1988.

*S. Lee Storesund,* for appellant.

*R. Patrick White, Kurtis A. Powell, Lewis B. Gardner,* for appellees.